AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

AUG 0 7 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black ZTE Phone
Model: Z965
IMEI: 864892032911690

Case N° **19MJ3354**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A-2, incorporated by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B-2, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 and 963 | Importation of controlled substances and conspiracy to do the same |

The application is based on these facts:
See Affidavit of HSI Special Agent Anthony Castellanos, incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Anthony Castellanos
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/7/19

*Judge's signature*

City and state: Sn Diego, CA

HON. MITCHELL D. DEMBIN
*Printed name and title*
MITCHELL D. DEMBIN
U.S. MAGISTRATE JUDGE

## ATTACHMENT B-2

### ITEMS TO BE SEIZED

Authorization to search the **Target Device # 2** described in **Attachment A-2** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Device # 2** for evidence described below.  The seizure and search of **Target Device # 2** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Device # 2** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 1, 2018 to January 9, 2019:

a.  tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

c.  tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

e.  tending to identify the user of, or persons with control over or access to, the **Target Device # 2**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

## AFFIDAVIT

I, Anthony Castellanos, being duly sworn, hereby state as follows:

### INTRODUCTION

1.      This affidavit supports an application for a warrant to search the following electronic devices (collectively the "**Target Devices**"):

> a.      CELLULAR TELEPHONE
> Silver Samsung Phone
> IMEI: 355647/07/461057/6
> S/N: R39H90C0FJW
> (**Target Device #1**);
>
> b.      CELLULAR TELEPHONE
> Black ZTE Phone
> Model: Z965
> IMEI: 864892032911690
> (**Target Device #2**);

as described in Attachments A-1 and A-2, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960, and 963.   This search supports an investigation and prosecution of Rafael MACIAS-Vasquez for the crimes mentioned above.   A factual explanation supporting probable cause follows.

2.      On or about January 9, 2019, MACIAS-Vasquez applied for entry into the United States at the San Ysidro, California, Port of Entry ("SYS POE").   MACIAS-Vasquez was the driver and sole occupant of a 2006 Toyota Highlander SUV bearing California license plates 6TSB795 (the "Vehicle").   A subsequent inspection of the Vehicle revealed a total of 26 packages concealed in the spare tire.   One of the packages contained a substance that field-tested positive for the characteristics of methamphetamine.   The **Target Devices** were seized from MACIAS-Vasquez after the discovery of the methamphetamine, and MACIAS-Vasquez was arrested for the importation of a federally controlled substance.   The **Target Devices** are currently in the possession of the HSI Special Agent in Charge (SAC) San Diego, which is located at 880 Front Street Suite 3200, San Diego, CA 92101.

1

3.     Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 and B-2.

4.     The information contained in this affidavit is based upon my experience and training and consultation with other federal, state, and local law enforcement agents.  The evidence and information contained herein was developed from my personal investigation of this matter and my review of documents, reports, and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation.   Instead, it contains only those facts necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.     I am a Special Agent of the United States Department of Homeland Security (DHS), U.S. Immigration & Customs Enforcement (ICE), Homeland Security Investigations ("HSI"), and have been so employed since September 2007.  I am a graduate of the Federal Law Enforcement Training Center and have received training in investigating various narcotics-related offenses, including the importation of narcotics and narcotics trafficking.  I have had training in the methods used by controlled substance smugglers and traffickers to import and distribute drugs and to operate distribution networks. My training and experience includes the use of cellular and digital telephones and other electronic devices used by narcotics traffickers in the normal course of their illicit activities.  I also have been cross-designated by the U.S. Drug Enforcement Administration ("DEA") to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act.  Since becoming an HSI Special Agent, I have been involved in numerous narcotics trafficking investigations involving the importation, distribution, and sale of large quantities of controlled substances.  I have also worked with other agents with extensive experience in narcotics smuggling and trafficking investigations.

6.     From January 2015 to May 2016, I was assigned to Operation Alliance at San

Ysidro, California. This assignment included investigations related to the illegal importation and trafficking of narcotics. In the course of my duties, I have worked as the case agent, directing specific drug-related investigations; I have worked as a surveillance agent and observed and recorded movements of individuals trafficking in drugs and of those suspected of trafficking in drugs; I have initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances; and, I have interviewed defendants, witnesses, and informants relative to the illegal trafficking of controlled substances. Through my observations and these interviews, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers and traffickers.

7.     Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.     Drug smugglers and traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b.     Drug smugglers and traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c.     Drug smugglers and traffickers and their coconspirators will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d.     Drug smugglers and traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e.     Drug smugglers and traffickers will use cellular/mobile telephones to notify or warn their coconspirators of law enforcement activity to include the presence and posture of marked and unmarked units as well as the operational status of checkpoints and border crossings; and

f.     Drug smugglers and traffickers and their coconspirators often use

3

1    cellular/mobile telephones to communicate with load drivers who transport
     their narcotics and/or drug proceeds.

2    8.    Based upon my training and experience and consultations with law

3
4    enforcement officers experienced in drug smuggling and trafficking investigations, and all

5    the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can

6    and often do contain electronic records, phone logs and contacts, voice and text

7    communications, and data such as emails, text messages, chats and chat logs from various

8    third-party applications, photographs, audio files, videos, and location data.   This

9    information can be stored within disks, memory cards, deleted data, remnant data, slack

10   space, and temporary or permanent files contained on or in the cellular/mobile telephone.

11   Specifically, I know based upon my training, education, and experience investigating drug

12   smuggling and trafficking conspiracies that searches of cellular/mobile telephones yields

13   evidence:

14

15       a.    tending to indicate efforts to import methamphetamine, or some other
              controlled substances from Mexico into the United States, or possess
16            and/or transport with the intent to distribute methamphetamine or
17            controlled substances within the United States;

18       b.    tending to identify accounts, facilities, storage devices, and/or services–
              such as email addresses, IP addresses, and phone numbers–used to
19            facilitate the importation of methamphetamine, or some other controlled
20            substances from Mexico into the United States, or possession and/or
21            transportation with the intent to distribute methamphetamine or controlled
              substances within the United States;
22

23       c.    tending to identify coconspirators, criminal associates, or others involved
              in importation of methamphetamine, or some other controlled substances
24            from Mexico into the United States, or possession and/or transportation
25            with the intent to distribute methamphetamine or controlled substances
              within the United States;
26

27       d.    tending to identify travel to or presence at locations involved in the
              importation of methamphetamine, or some other controlled substances
28            from Mexico into the United States, or possession and/or transportation

with the intent to distribute methamphetamine or controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

9.  Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months—this planning often occurs through mobile telephones. Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported. For that reason, I am requesting permission to search the Target Devices from September 1, 2018, up to and including January 9, 2019.

## FACTS SUPPORTING PROBABLE CAUSE

10.  According to a report by Customs & Border Protection Officer ("CBPO") Victor Tovar, on January 9, 2019, at approximately 0559 hours, CBPO Tovar was assigned to the SYS POE pre-primary inspection area. CBPO Tovar conducted the inspection of MACIAS-Vasquez' vehicle. CBPO Tovar observed tampering to the spare tire that was located in the rear undercarriage area of the Vehicle. CBPO Tovar used his density reader on the spare tire and it read extremely high; the tire also tapped solid. CBPO Tovar inquired as to the purpose of his trip to Mexico, and MACIAS-Vasquez stated he had gone to Tijuana because he could not find a place to shower in San Diego. CBPO Tovar obtained two negative Customs declarations from MACIAS-Vasquez. CBPO Tovar referred the

1    Vehicle to secondary inspection.

2        11.    A report written by CBP Canine Enforcement Officer (CEO) Dennis Murray

3    states that searched CEO Murray searched MACIAS-Vasquez's vehicle with the assistance

4    of a Human/Narcotics Detector Dog (HNDD). The HNDD alerted to the rear undercarriage

5    where the spare tire was mounted.

6        12.    According to a report written by CBPO Raymond Buclatin, who was assigned

7    as the Z-Portal operator, he screened the Vehicle with an x-ray and discovered anomalies

8    within the spare tire.

9        13.    According to his report, CBPO Daniel Tuck was then assigned to conduct an

10   inspection of the Vehicle. CBPO Tuck was able to lower the spare tire via an access point

11   located in the interior of the Vehicle. CBPO Tuck removed a total of 26 packages weighing

12   approximately 20.94 kilograms from spare tire. One of the packages was randomly selected

13   and the contents field-tested positive for the properties of methamphetamine. CBPO Tuck

14   consequently placed MACIAS-Vasquez under arrest. The bulk methamphetamine, the

15   Vehicle, cell phones, and miscellaneous documents were seized.

16       14.    HSI was contacted via sector and notified of MACIAS-Vasquez's arrest, and

17   your affiant responded to SYS POE to interview MACIAS-Vasquez.

18       15.    At approximately 1014 hours, MACIAS-Vasquez was read his *Miranda* rights

19   and he agreed to waive them. During the post *Miranda* interview, MACIAS-Vasquez

20   admitted monetary compensation for the smuggling of narcotics into the United States from

21   Mexico. MACIAS-Vasquez stated he previously crossed the Vehicle and was paid $2,000

22   USD after delivering the Vehicle to coconspirators. MACIAS-Vasquez stated he first met

23   a few of coconspirators on or about September of 2018. MACIAS-Vasquez identified the

24   **Target Devices** as his and confirmed the **Target Devices** were used to communicate with

25   coconspirators.

26       16.    On May 15, 2019, I signed for the **Target Devices** from CBP custody and

27   transported them to HSI SAC San Diego for storage.

28       17.    I have reviewed MACIAS-Vasquez's Border crossing records, which reveal

that MACIAS-Vasquez entered the United States from Mexico approximately seventy-nine times between February 3, 2018, and January 9, 2019. Records revealed twenty of those border crossing were via pedestrian lanes; the remaining fifty-nine crossings, MACIAS-Vasquez was associated with the Vehicle.

18.   Based upon my experience and investigation in this case, there is probable cause to believe that MACIAS-Vasquez, as well as other persons currently unknown, were involved in an ongoing conspiracy to import and transport methamphetamine. Based on my experience investigating drug smugglers and traffickers, there is probable cause to believe that MACIAS-Vasquez used the **Target Devices** to coordinate with coconspirators regarding the importation, transportation, and distribution of methamphetamine, and to otherwise further this conspiracy both inside and outside of the United States. Accordingly, there is also probable cause to believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices**, which may identify other persons involved in drug smuggling and trafficking activities.

## METHODOLOGY

19.   It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular/mobile telephones

1  do not have hard drives or hard drive equivalents and store information in volatile memory
2  within the device or in memory cards inserted into the device.  Current technology provides
3  some solutions for acquiring some of the data stored in some cellular/mobile telephone
4  models using forensic hardware and software.  Even if some of the stored information on
5  the device may be acquired forensically, not all of the data subject to seizure may be so
6  acquired.  For devices that are not subject to forensic data acquisition or that have
7  potentially relevant data stored that is not subject to such acquisition, the examiner must
8  inspect the device manually and record the process and the results using digital
9  photography.  This process is time and labor intensive and may take weeks or longer.

10      20.     Following the issuance of this warrant, I will collect the **Target Devices** and
11  subject them to analysis.  All forensic analysis of the data contained within the telephone
12  and its memory cards will employ search protocols directed exclusively to the
13  identification and extraction of data within the scope of this warrant.

14      21.     Based on the foregoing, identifying and extracting data subject to seizure
15  pursuant to this warrant may require a range of data analysis techniques, including manual
16  review, and, consequently, may take weeks or months.  The personnel conducting the
17  identification and extraction of data will complete the analysis within ninety (90) days,
18  absent further application to this court.

19                              **CONCLUSION**

20      22.     Based on all of the facts and circumstances described above, there is probable
21  cause to conclude that MACIAS-Vasquez used the **Target Devices** to facilitate violations
22  of Title 21, United States Code, Sections 952, 960, and 963.

23      23.     Because the **Target Devices** were promptly seized during the investigation of
24  MACIAS-Vasquez' smuggling activities and have been securely stored, there is probable
25  cause to believe that evidence of illegal activities committed by MACIAS-Vasquez
26  continues to exist on the **Target Devices**.  Based on the above facts and my training and
27  experience, there is probable cause to believe that evidence of violations of Title 21, United

28

States Code, Sections 952, 960, and 963 will be found on the **Target Devices** between September 1, 2018 up to and including January 9, 2019.

24.     WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and to seize items listed in Attachments B-1 and B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Anthony Castellanos
HSI Special Agent

Subscribed and sworn to before me this ____7____ day of August, 2019.

The Honorable Mitchell D. Dembin
United States Magistrate Judge

9



**Notice of 6-Month Performance Appraisal - Lilliana Cervantes**

Stephanie Fox    to: Roi-Ann Bressi, Lilliana Cervantes          07/23/2019 10:39 AM
Cc:  Theodore E Lewis, Mina Guzman

Follow Up:          Normal Priority.

**Lilliana Cervantes'** new position as Calendar Clerk took effect on 03/18/2019, and therefore is due for a 6-month, new-in-role Performance Appraisal before **09/02/2019.**

- **Lilliana,** please complete and submit your Self Appraisal to **Roi-Ann** by **08/05/2019**. Please access instructions for creating your Self Appraisal in the Performance Management section of the HR website ("Creating Your Self Appraisal").

- **Roi-Ann,** please see **Lilliana's** Performance Appraisal packet documents and associated due dates in the Performance Management section of the HR website. In that section, you will also find instructions for completing Performance Appraisals in SharePoint.

Please do not hesitate to ask should you have any further questions.


Thanks!

Stephanie Fox
**Human Resources Specialist**
United States District Court
Southern District of California
619.446.3985